UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION

UNITED STATES                                                                                    Plaintiff

v.                                                                Criminal Action No. 3:18-CR-000216-RGJ

JOHNATHAN HOYER                                                                                  Defendant

## MEMORANDUM OPINION & ORDER

This matter comes before the Court on Defendant Johnathan Hoyer's ("Hoyer") Motion to Suppress Evidence (the "Motion to Suppress"). [DE 18]. The Court held an evidentiary hearing and the matter is now ripe. [DE 26]. For the reasons below, the Court will **GRANT** Mr. Hoyer's Motion to Suppress [DE 18].

### I.     BACKGROUND

On April 18, 2019, Kentucky State Police ("KSP") Detective Zack Morris responded to an advertisement posted by Hoyer on Double List seeking to engage in sexual acts with a "woman." [DE 27 at 71, 88]. Over a five to six-day period, Detective Morris, working undercover, "chatted" with Hoyer as "Brittany," a 41-year-old female, and "Autumn," Brittany's underage daughter. *Id.* at 71-72, 82. The conversations were overtly sexual. *Id.* Hoyer eventually agreed to meet them in the Jeffersontown area of Louisville, Kentucky. *Id.*

On April 24, 2018, Hoyer traveled to meet Brittney and Autumn, but instead KSP Detectives met Hoyer and "secured" him. *Id.* at 75. They placed Hoyer in the front passenger seat of the KSP interview van. *Id.* at 72, 77. Detective Morris and Lieutenant Mike Bowling interviewed Hoyer. *Id.* at 78. Hoyer told the detectives he wanted to cooperate and spoke freely. *Id.* at 83.

1

After the detectives asked Hoyer for his identifying information, they asked him, "Why are we here?" [DE 29, Exhibit 1, 00:15-1:35]. In response, Hoyer explained that he was there because a "woman answered one of [his] ads . . . [he] was having a little bit of fun . . . when she answered [him] . . . how about a girl, a woman and her daughter . . . at first [he] was like . . .what? So [they] talked and [they] talked . . . [He] had literally every intention of showing up [there] and kinda talking to her, maybe she had issues and so forth because again [he has] an eight-year old son [himself] so . . . [he] wasn't." *Id.* at 1:36-2:14. Detective Morris then asked Hoyer about the ad he had posted, asked for the woman's name, and asked follow-up questions about the woman's underage daughter. *Id.* at 2:15-2:50. Hoyer answered all of Detective Morris' questions and admitted that Brittney essentially propositioned him to have sex with both her and her daughter. *Id.* at 3:10-3:35. Detective Morris also asked him what he spoke with Brittney about, and Hoyer said that he was "going to perform oral sex on both her and her daughter . . . but . . . [he] was playing along with the fact that again the way the conversation was occurring . . . [he] could tell it was the same person . . . so [he] just thought ok she had some weird, fun fetish at that point." *Id.* at 3:50-4:15.

More than four minutes into the interrogation, Detective Morris stated to Hoyer that "I'm going to read you your rights, ok. And something we gotta do for paperwork and stuff . . . consent and all that kind of stuff." [DE 29, Exhibit 1, 4:22-4:30]. Detective Morris then stated "You are not under arrest. We're just here to talk to you." [DE 29, Exhibit 1, 4:32-4:35]. The Detective gave Hoyer his *Miranda* rights and obtained a signed waiver. *Id.* Detective Morris testified that he did not intentionally delay giving Hoyer his *Miranda* rights; rather, it was a "lapse in judgment." [DE 27 at 84]. After Detective Morris read Hoyer his *Miranda* rights, Hoyer continued to speak

to the detectives about the incident and his conversations with Brittney and Autumn. The interrogation lasted 1 hour, 27 minutes, and 34 seconds. [DE 29, Exhibit 1].

The grand jury charged Hoyer with attempted enticement. [DE 1]. Hoyer has now moved to suppress his statements. [DE 18]. The Court held a suppression hearing [DE 26], and the parties filed post-hearing briefs. [DE 30; DE 31].

## II. STANDARD OF REVIEW

"It is well settled that in seeking suppression of evidence the burden of proof is upon the defendant to display a violation of some constitutional or statutory right justifying suppression." *United States v. Rodriquez-Suazo*, 346 F.3d 637, 643 (6th Cir. 2003) (quoting *United States v. Feldman*, 606 F.2d 673, 679 n.11 (6th Cir. 1979). The Sixth Circuit has made clear that the burden of proof on the defendant requesting suppression extends to both "the burden of production and persuasion." *United States v. Chaar*, 137 F.3d 359, 363 (6th Cir. 1998); *United States v. Patel*, 579 F. App'x 449, 453 (6th Cir. 2014).

"No person shall be compelled in any criminal case to be a witness against himself." U.S. Const. Amend. V. In *Miranda v. Arizona*, the Supreme Court, in prescribing safeguards for the effectuation of the Fifth Amendment, held that "the prosecution may not use statements . . . stemming from custodial interrogation of the defendant unless it demonstrates the use of procedural safeguards effective to secure the privilege against self-incrimination." 384 U.S. 436, 444 (1966). The safeguards "prescribed by *Miranda* are to ensure that the police do not coerce or trick captive suspects into confessing." *Berkemer v. McCarty*, 468 U.S. 420, 433 (1984). If a suspect is interrogated while in custody and he does not voluntarily, knowingly, and intelligently waive his *Miranda* rights, any statements he makes to the police must be suppressed. *Id.* at 429.

A suspect is in custody if, under the totality of the circumstances, a reasonable person would not feel free to end the interrogation by the police and leave. *See Yarborough v. Alvarado*, 541 U.S. 652, 663 (2004). Police interrogation includes "not only. . . express questioning, but also . . . any words or actions on the part of the police (other than those normally attendant to arrest and custody) that the police should know are reasonably likely to elicit an incriminating response." *Rhode Island v. Innis*, 446 U.S. 291, 301 (1980).

### III. DISCUSSION

Hoyer moves to suppress all pre-and post-*Miranda* statements made by Hoyer at the scene of his detention on grounds that he made these statements as part of a custodial interrogation without first being effectively advised of and knowingly and intelligently waiving his *Miranda* rights. [DE 18 at 45]. At the evidentiary hearing the United States agreed that all of Hoyer's statements were made while he was in custody. [DE 27 at 69] The United States further conceded that those statements made by Hoyer before being given his *Miranda* rights were improperly obtained and should be suppressed. *Id.* The United States contends, however, that after being given the *Miranda* warning, Hoyer made a knowing and voluntary decision to waive his rights. [DE 30 at 108]. The issue, then, is whether the *Miranda* rights given after Hoyer's first statement were ineffective, thereby making the second statement inadmissible. *Missouri v. Seibert*, 542 U.S. 600 (2004).

**A.** **Hoyer's Pre-*Miranda* Statements.**

The United States concedes that Hoyer was in custody, that his first statement was made before his *Miranda* rights were read to him, and that it should be excluded. [DE 27 at 69]. The Court agrees. An "interrogation" comprises "not only [ ] express questioning, but also any words or actions on the part of the police that the police know are reasonably likely to elicit an

4

incriminating response from the suspect." *Rhode Island v. Innis,* 446 U.S. 291, 301 (1980). *Miranda* rights are not required for questions "reasonably related to the police's administrative concerns," such as the defendant's name, address, height, weight, eye color, date of birth, and current address. *Pennsylvania v. Muniz,* 496 U.S. 582, 601 (1990); *United States v. Clark,* 982 F.2d 965, 968 (6th Cir. 1993) ("ordinarily . . . the routine gathering of biographical data for booking purposes should not constitute interrogation under *Miranda* "). Questions that are investigatory, however, require the police to administer *Miranda* rights. *See United States v. Pacheco-Lopez,* 531 F.3d 420, 424 (6th Cir. 2008)(comparing case law and establishing the line between questions relating to the processing of an arrest that are biographical and questions of an investigatory nature).

The Detective's pre-*Miranda* questions and Hoyer's pre-*Miranda* answers cannot be described as merely biographical but were clearly part of the detective's investigation. While some questions were biographical, asking Hoyer, "Why are we here?" [DE 29, Exhibit 1, 00:15–1:35], certainly was "reasonably likely to elicit an incriminating response," thus mandating a *Miranda* warning. *Innis,* 446 U.S. at 301. And the location of these pre-*Miranda* questions and statements also supports a conclusion that a *Miranda* warning was required. Detectives placed Hoyer in the front passenger seat of the KSP interview van, directly across a table from two officers. *Id.* at 77. He was not free to leave. While the detectives did document Hoyer's information, the detectives also audio recorded the interview, and the questioning went beyond that needed for booking. Because the detectives did not administer the *Miranda* warning for these initial questions, the answers are "presumed compelled" and "excluded at trial in the State's case in chief." *Oregon v. Elstad,* 470 U.S. 298, 317 (1985).

## B. Hoyer's Post-*Miranda* Statements.

More than four minutes into the interrogation, Detective Morris stated "You are not under arrest. We're just here to talk to you." [DE 29, Exhibit 1, 4:32-4:35]. The Detective proceeded to give Hoyer his *Miranda* rights and obtained a signed waiver. Then with no break in the interrogation, Detective Morris had Hoyer orally confirm all the facts and statements made before the *Miranda* rights and continued on with further investigatory questions. [DE 29, Exhibit 1, 06:05]

At issue is whether "it would be reasonable to find that in [this] circumstance[] the warnings could function 'effectively' as *Miranda* requires . . . [f]or unless the warnings could place a suspect who has just been interrogated in a position to make such an informed choice, there is no practical justification for accepting the formal warnings as compliance with *Miranda*, or for treating the second stage of interrogation as distinct from the first, unwarned and inadmissible segment." *Missouri v. Seibert*, 542 U.S. 600, 611-612 (2004).

In *Seibert*, the Court addressed "*Miranda*-in-the-middle" when the police officers asked similar questions pre and post-warning. 542 U.S. 600, 615 (2004). A plurality of the Court set forth factors for courts to consider when determining whether *Miranda* rights delivered in the middle of an interrogation are effective: 1) "the completeness and detail of the questions and answers in the first round of interrogation"; 2) "the overlapping content of the two statements"; 3) "the timing and setting of the first and the second"; 4) "the continuity of police personnel"; and 5) "the degree to which the interrogator's questions treated the second round as continuous with the first." *Id*. If the results of the inquiry determine an effective warning then "a court can take up the standard issue of voluntary waiver and voluntary statement; if no [effective warning], the subsequent statement is inadmissible for want of adequate *Miranda* warning, because the earlier

and later statements are realistically seen as parts of a single, unwarned sequence of questioning." *Id.* at 612, n. 4. The *Seibert* plurality held that the defendant's statements post-*Miranda* were inadmissible because the police did not inform the suspect that her statements pre-*Miranda* could not be used, there was little time between interrogations, and the questions post-*Miranda* were a continuation of the questions asked before it was given. *Id.* at 616-617. As discussed below, all five *Seibert* factors support suppression of Hoyer's post-*Miranda* statements.

1. **The completeness and detail of the questions and answers in the first round of interrogation.**

The first *Seibert* factor is "the completeness and detail of the questions and answers in the first round of interrogation." 542 U.S. at 615. This factor favors suppression. Detective Morris asked Hoyer "why are we here?" before *Miranda*, leading Hoyer to admit placement of the online ad, the contents of his online chats about the ad, and that he was in the parking lot to meet Brittney and Autumn as discussed in the online chats. [DE 29, Exhibit 1]. The pre-*Miranda* questioning was not as detailed as in *Seibert*, but Detective Morris asked the questions necessary to "make an arrest, tailor their post-*Miranda* interrogation, and secure a conviction." *United States v. Ray*, 690 F. App'x 366, 372 (6th Cir. 2017) (citing *United States v. Ashmore*, 609 F. App'x 306 (6th Cir. 2015)) (internal quotation marks omitted); *see also United States v. Pacheco-Lopez*, 531 F.3d 420, 422-28 (6th Cir. 2008) (finding first factor satisfied where initial questioning consisting of asking the defendant's name, where he lived, and how he arrived at a house involved with drug trafficking). Thus, Detective Morris' questioning was "detailed and complete enough" to suggest the *Miranda* warning was ineffective. *Id*. at 373.

2. **The overlapping content of the two statements.**

The second factor examines "the overlapping content" of the statements made by the defendant before and after the *Miranda* warning. *Seibert*, 542 U.S. at 615. This factor suggests

7

the *Miranda* warning Hoyer received was ineffective. In *Pacheco-Lopez*, the officers first asked the defendant his identity, where he lived, and how he arrived at the house. 531 F.3d at 422. The defendant answered that he was from Mexico and had just driven to Kentucky that week, after which the officers *Mirandized* him and then asked if he had brought drugs to residence. *Id*. The Sixth Circuit held that despite the new questions, such questions were the "the next logical question[s] based on the earlier statements," therefore, satisfying the second factor. *Id*. at 428. Moreover, extended admissions post-*Miranda* compared to brief admissions pre-*Miranda* do not signify a lack of overlap. *Ray*, 690 Fed. App'x. 366 at 373. In *Ray*, the defendant admitted to possessing firearms and having served time in federal prison before the *Miranda* warning. *Id*. When answering questions post-*Miranda*, the defendant elaborated on his prior responses. *Id*. at 373-374.

As in *Ray and Pacheco-Lopez*, the pre-*Miranda* questions about the ad and chats substantially overlapped with Hoyer's post-*Miranda* statements. Detective Morris admitted on cross that Hoyer made no inculpatory statements post-*Miranda* that he had not already made pre-*Miranda*, thus the second factor supports suppression. [DE 27 at 95]; *Ray*, 690 Fed. App'x 366 at 374.

### 3. The timing and setting of the first and second interrogations.

The third *Seibert* factor is "the timing and setting of the first and the second interrogations." 542 U.S. at 615. In *Pacheco- Lopez*, the interrogations occurred in the same place and the only break between them was to read the defendant his *Miranda* rights. 531 F.3d at 427. Thus, the court found the third factor favored suppression of the post-*Miranda* statements because "administration of the *Miranda* warning could not lead a suspect to a meaningful understanding that he could cease answering the questions at that point in time." *Id.* at 427.

8

The factual scenario here aligns closely with *Pacheco-Lopez*. Here, the only break in the interrogation was when Hoyer was given his *Miranda* rights, the interrogation was completed in the same setting inside the KSP van with the same detectives, and the questions post-*Miranda* were continuous with the first. [DE 29, Exhibit 1]. Hoyer's interrogation reflects the exact problem described by the Supreme Court *Seibert*: "Unless the warnings could place a suspect who has just been interrogated in a position to make [ ] an *informed choice,* there is no practical justification for accepting the formal warnings as compliance with *Miranda,* or for treating the second stage of interrogation as distinct from the first, unwarned and inadmissible segment." 542 U.S. at 612 (emphasis added). There was no break in the questioning or any effort by the Detectives to ensure that Hoyer understood that his prior statements could not be used against him; consequently, a suspect in Hoyer's situation would have viewed the two series of questions as part of a single interrogation. Thus, the third factor supports suppression.

4. **The continuity of police personnel.**

The fourth *Seibert* factor looks to "the continuity of police personnel." 542 U.S. at 615. The same detectives were present for the entirety of both interrogations; thus, this factor is supports suppression. *See Pacheco- Lopez*, 531 F.3d at 427.

5. **The degree to which the interrogator's questions treated the second round as continuous with the first.**

The last *Seibert* factor examines "the degree to which the interrogator's questions treated the second round as continuous with the first." 542 U.S. at 615. In *Pacheco-Lopez*, the Sixth Circuit ruled that when "there [is] no break in the questioning or any effort by the police to ensure that [a defendant] understood that his prior statements could not be used against him . . . we believe that any suspect in [the defendant's] situation would have viewed the two series of questions as part of the one sequence." *Pacheco- Lopez*, 531 F.3d at 427-428. Like the defendant in *Pacheco-*

*Lopez*, Hoyer was answering questions about the ad and chats when the interrogation was stopped, and he was *Mirandized* with no break in the interrogation. As a result, the two series of questions could be viewed as one sequence. Furthermore, while Hoyer voluntarily spoke with police officers post-*Miranda*, at no point was it made clear that his statements before *Miranda* were inadmissible. Thus, this factor is satisfied.

In sum, the factors identified by the *Seibert* plurality all show that a reasonable person could not have seen the questions post-*Miranda* as a new and distinct experience. *Ray*, 690 Fed. App'x 366 at 377 (citing *Seibert*, 542 U.S. at 615). In fact, Detective Morris admitted on cross that Hoyer made no inculpatory statements post-*Miranda* that he had not already made pre-*Miranda*. [DE 27 at 95]. Consequently, the *Miranda* warning was ineffective, and Hoyer's statements, both pre-*Miranda* and post-*Miranda*, must be suppressed. Because Detective Morris' *Miranda* warning was ineffective, Hoyer could not waive his *Miranda* rights and thus the Court need not determine whether his *Miranda* waiver was made knowingly, voluntarily, and intelligently. *See Seibert*, 542 U.S. at 612 n.4 (describing how a defendant cannot waive his *Miranda* rights if the underlying warning was ineffective).

### III. CONCLUSION

For the reasons set forth above, and being otherwise sufficiently advised, **THE COURT HEREBY ORDERS** that Hoyer's Motion to Suppress [DE 18] is **GRANTED**.

Rebecca Grady Jennings, District Judge
United States District Court

October 18, 2019